KELLY, Judge:
 

 In this opinion we are called upon to determine whether the trial court erred in holding that in Pennsylvania a claim for equitable relief is by law, outside the terms of an arbitration agreement. The trial court held that this class action suit, calling for equitable as well as legal relief, was outside the terms of the arbitration agreement between the appellant, Shearson Lehman Hutton, Inc. [hereinafter “Shearson”], and the appellees [hereinafter the “Dickler Group”]. We find that the broad agreement [hereinafter “Shearson client agreement”] signed by the parties encompasses all controversies, and that federal and Pennsylvania law allows arbitrators to provide all kinds of relief not prohibited by statute. Furthermore we find that this class action, if properly certified, may continue through arbitration on a class-wide basis. We therefore remand to the trial court for class certification proceedings. After this ruling, the trial court must compel arbitration. The Dickler Group
 
 *289
 
 may then proceed with the dispute through arbitration either as a class or individually, depending on the result of the class certification proceedings.
 

 The relevant facts and procedural history are as follows. The Dickler Group purchased securities between January, 1989 and June, 1989 from Shearson. On February 15,1990, the Dickler Group brought this action, individually, and as class representatives for all similarly situated, alleging that Shearson failed to deliver the purchased securities or pay stock dividends on the securities despite their requests. The Dickler Group’s original complaint sought recovery for three causes of action: breach of fiduciary duty, breach of contract and tortious conversion.
 

 On April 12, 1990, Shearson filed a motion to stay claims and compel arbitration, citing the Shearson client agreement between the parties. Paragraph 23 of the agreement states:
 

 Any controversy arising out of or relating to my accounts, to transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, ... shall be settled by arbitration in accordance with the rules then in effect, of the NASD or the Board of Directors of the NYSE or American Stock Exchange, Inc., as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after demand by you that I make such election, then you will have the right to elect the arbitration tribunal of your choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.
 

 On May 18, 1990, the Dickler Group filed a response to the motion, and an amended complaint which included a prayer for equitable relief. In its response, the Dickler Group argued that the claims were not arbitrable because of the request for equitable relief. Shearson responded to the Dickler Group’s answer, arguing that the Shearson client agreement was broad enough to address all disputes.
 

 
 *290
 
 On July 10, 1990, the trial court entered an order denying appellant’s motion to compel arbitration. The trial court ruled that the dispute presented was outside the terms of the Shearson client agreement. The trial court stated that “[t]he [equitable] relief requested cannot be awarded through arbitration.” Tr.Ct.Op. at 3. On August 10, 1990, Shearson filed this appeal.
 

 Shearson raises the following issue for our review:
 

 I. WHETHER THE LANGUAGE OF THE ARBITRATION CLAUSE CONTAINED IN THE SHEARSON CLIENT AGREEMENT REQUIRES ARBITRATION OF CLAIMS ASSERTED BY THE PLAINTIFFS AGAINST SHEARSON LEHMAN HUTTON, INC., INCLUDING CLAIMS FOR EQUITABLE RELIEF?
 

 Appellant-Shearson’s Brief at 3.
 
 [1]
 

 Shearson contends that the trial court erred by failing to stay proceedings and compel arbitration. This Court, guided by the deference to arbitration agreements by both federal and Pennsylvania courts and legislatures, finds that
 
 *291
 
 the trial court erred by allowing this dispute to bypass the contracted for arbitration process. The trial court failed to defer to the broad directive of the United States Supreme Court which has mandated a standard of enforceability which should have guided the outcome of this case, and to Pennsylvania precedent which suggests that under the most recent legislation, equitable decrees by arbitrators will be enforced by state courts. The trial court, in reaching its conclusion, also gave inadequate attention to the comprehensive nature of the Shearson client agreement.
 

 The standard for enforcing an arbitration agreement is mandated by federal law. The Federal Arbitration Act (FAA) has been interpreted by the Supreme Court as mandating the enforcement of all arbitration agreements which “evidence a transaction involving commerce, unless they are revocable on contractual grounds.”
 
 Southland Corp. v. Keating,
 
 465 U.S. 1, 11-12, 104 S.Ct. 852, 858-59, 79 L.Ed.2d 1, 12 (1984).
 
 [2]
 
 The Court extended this principle of enforceability to the states, noting that if Congress did not intend states to be bound, the limiting language “evidencing] a transaction involving commerce” would have been entirely superfluous.
 
 Id.
 

 The Court has consistently reiterated this policy of respecting arbitration agreements.
 
 See Mitsubishi Motors v. Soler Chrysler-Plymouth,
 
 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444, 455 (1985) (“[A]s with any other contract, the parties’ intentions control, but those intentions are generally construed as to issue of arbitrability.”);
 
 Dean Witter Reynolds, Inc. v. A. Lamar Byrd,
 
 470 U.S. 213, 219, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158, 164 (1985) (“The legislative history of the [Federal Arbitration] Act establishes that the purpose behind its passage was to ensure
 
 *292
 
 judicial enforcement of privately made agreements to arbitrate.”);
 
 Moses H. Cone Hospital v. Mercury Constr.,
 
 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983) (“Section 2 [of FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, not withstanding any state substantive or procedural policies to the contrary.”);
 
 AT & T Technologies v. Communications Workers,
 
 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648, 656-57 (1986) (“[Tjhere is a presumption of arbitrability in the sense that ‘[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.’ Such a presumption is particularly applicable where the clause is [a] broad ... one.”) (citation omitted).
 

 In establishing this broad federal directive favoring arbitration agreements, the United States Supreme Court reinforced the traditional deference which federal courts have shown towards the remedial power of arbitrators. The Court has emphasized that the arbitration process would only be viable if it could handle all the disputes which could arise under the agreement and only if the arbitrators have a great deal of flexibility in fashioning remedies.
 
 See United Steelworkers v. Enterprise Wheel & Car Corp.,
 
 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960).
 

 In
 
 Southland Corp. v. Keating, supra,
 
 which extended federal enforceability standards to state courts, the Court noted that the Federal Arbitration Act was motivated by a congressional purpose to overcome the rule that courts of equity will not enforce arbitration agreements.
 
 [3]
 
 The Court noted that the resistance of many state courts was grounded solely in the tradition of English courts jealously maintaining their own jurisdiction.
 
 See Southland Corp. v.
 
 
 *293
 

 Keating, supra,
 
 465 U.S. at 13, 104 S.Ct. at 859, 79 L.Ed.2d at 13-14.
 

 The
 
 Southland Corp. v. Keating, supra,
 
 established a general rule of broad enforceability for arbitration agreements, including a strong suggestion that arbitrators be allowed to dispense equitable relief. While this decision will force many states to reevaluate and reverse their historical disdain for arbitration, Pennsylvania’s policy towards arbitration is entirely consistent with the United States Supreme Court’s holding. In Pennsylvania, our courts’ decisions have been governed by two basic, but hard to reconcile propositions: (1) arbitration agreements are to be strictly construed and ... such agreements should not be extended by implication and (2) when the parties agree to arbitration in a clear and unmistakable manner, then every reasonable effort will be made to favor such agreements.
 
 See Emmaus Mun. Auth. v. Eltz,
 
 416 Pa. 123, 125, 204 A.2d 926, 927 (1964);
 
 Hassler v. Columbia Gas Transmission Corp.,
 
 318 Pa.Super. 302, 307, 464 A.2d 1354, 1356 (1983).
 

 While the admonition against extending by implication the terms of the agreement clearly suggests limits on the interpretation of arbitration agreements, such limits are of small concern in evaluating a contract which employs sweeping, all encompassing language. The Pennsylvania Supreme Court, when confronted with a contract which called for arbitration employing the term “[a]ny controversy ...,” could find no grounds to enjoin such an agreement. The Court suggested that “[bjroader language would be difficult to contrive.”
 
 Flightways Corp. v. Keystone Helicopter Corp.,
 
 459 Pa. 660, 663, 331 A.2d 184, 185 (1975).
 
 [4]
 

 The Shearson client agreement, also beginning with the words “[a]ny controversy ...,” employs even more encompassing language in directing disputes towards arbitration than the agreement interpreted in
 
 Flightways, supra.
 
 Absent any language in the rest of the sales agreement or
 
 *294
 
 proof of the parties’ intent which would limit the plain language of the arbitration clause, it would be virtually impossible to extend its scope by implication.
 

 With no restrictions in the express terms of the Shearson client agreement, this Court is free to interpret the arbitration agreement in accordance with this state’s preference for enforcing arbitration agreements.
 
 See Flightways, supra,
 
 459 Pa. at 663, 331 A.2d at 185 (“It has become well established that ‘settlement of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our docket crowded and in some jurisdictions congested arbitration is favored by the courts.’ ”) (citation omitted);
 
 Sanitary Sewer Auth. v. Dial Assoc.,
 
 367 Pa.Super. 207, 210-11, 532 A.2d 862, 863, 864 (1987) (“In accordance with the general policy favoring the arbitration of contract differences, an order enjoining arbitration of a particular grievance should not be granted unless it can be said with positive assurance that the agreement involved is not susceptible of an interpretation that covers the asserted dispute.”).
 

 While the federal and state policies favoring arbitration provide considerable support for Shearson’s position, no Pennsylvania Court has ruled on the exact issue of whether arbitrators may dispense equitable relief, and in turn have those remedies be enforced by the state courts. However, Shearson’s contention is supported by the language of the 1980 Uniform Arbitration Act,
 
 see
 
 42 Pa.C.S.A. §§ 7301
 
 et seq.,
 
 specifically by Section 7316. This section empowers a trial court to enforce the ruling of an arbitrator, by entering either a
 
 judgment or decree
 
 in conformity with the arbitrator’s holding. The equitable language of this amendment corrected a judicial inconsistency illustrated by a 1983 case in which an arbitration agreement was contracted for and evaluated under Pennsylvania’s Arbitration Act of 1927. This Court held that the arbitrator was allowed to declare injunctive relief, but because the 1927 Act only allowed for enforcement of
 
 judgments,
 
 such an injunctive decree could not be enforced by the courts.
 
 See Dover v. Philadelphia
 
 
 *295
 

 Housing Authority,
 
 318 Pa.Super. 460, 465 A.2d 644 (1983). We recognized that the result, in
 
 Dover, supra,
 
 would be different if the contract was evaluated under the 1980 Arbitration Act.
 
 Id.,
 
 318 Pa.Superior Ct. at 465, n. 9, 465 A.2d 644. This precedent of permitting an arbitrator to issue equitable decrees, in tandem with the 1980 statute mandating the enforcement of these decisions, establishes conclusively the appropriateness of the arbitral forum for deciding issues of equity.
 

 Instantly, the arbitration agreement contains no language which would limit the scope of its jurisdiction beyond those limits mandated by law. Nor has either side produced evidence suggesting the parties intent as to this issue. The Shearson client agreement’s “clear and unmistakable” language is clearly comprehensive enough to allow arbitration proceedings to be used to address this dispute. We find that the arbitration clause in the Shearson client agreement encompasses equitable relief. This finding is entirely consistent both with the scope of the agreement and state and federal law. Therefore, we hold that the trial court erred in refusing to compel arbitration for the claims presented by the Dickler Group.
 

 The Dickler Group, in responding to Shearson’s appellate issue, has raised an additional concern which, if left unaddressed, would detract from the sound policy of favoring arbitration agreements. “The relatively small amount of monetary relief to which each class member would be entitled mandates the conclusion that if each Shearson customer was relegated only to individually proceeding in arbitration, the costs involved would effectively bar most, if not all, from obtaining the relief to which they are entitled and which this class action seeks to achieve.”
 
 See
 
 Dickler Group’s brief at 7-8.
 

 The Dickler Group’s concern hinges on the premise that each aggrieved individual will have to bring her case separately to an arbitrator. The economics of such proceedings suggest that few, if any, actions will occur, thereby allow
 
 *296
 
 ing Shearson to discount the burdens of these infrequent arbitrations and continue its allegedly improper policy.
 

 The Dickler Group’s concern, however, may be properly dismissed if the trial court, while compelling arbitration, allows any properly certified class to proceed through arbitration. We agree with the California appellate court which was the first to allow class actions in arbitration proceedings, that “there is no insurmountable obstacle to conducting an arbitration on a class-wide basis. In an appropriate case, such a procedure undoubtedly would be the fairest and most efficient way of resolving the parties’ disputes.”
 
 Keating v. Superior Ct. of Alameda County, App.,
 
 109 Cal.App.3d 784, 167 Cal.Rptr. 481, 492 (1980) (California state court case allowing class-wide arbitration).
 

 The Pennsylvania Supreme Court has given approval at least to the concept of class action arbitration proceedings, although it has never ruled on the applicability of such procedures when the arbitration agreement does not specifically call for it. The Pennsylvania Supreme Court held that a class action claim before the state’s Board of Arbitration of Claims was proper. The Court cited the Board’s own promulgated rules, which adopted the entire Pennsylvania Rules of Civil Procedure to govern its own proceedings. The Court found that Pa.R.Civ.P. class action rules,
 
 see
 
 Pa.R.Civ.P. 1701-1716, were included in this adoption.
 
 See Stevenson v. Com. Dept. of Revenue,
 
 489 Pa. 1, 4, 413 A.2d 667, 668 (1980).
 

 The Shearson client agreement contains no explicit language, as the agreement in
 
 Stevenson, supra,
 
 which would dispositively answer whether class action was intended or considered. However, the holding in
 
 Stevenson, supra,
 
 implies that there is no policy reason so paramount in this state which would preclude class action proceedings from being imposed on an arbitration agreement.
 

 The United States Supreme Court in its
 
 Southland Corp. v. Keating, supra,
 
 did not rule on the propriety of the California Courts superimposing class-action procedures on the contract arbitration. Because the appellant in that case
 
 *297
 
 did not raise its opposition to such proceedings as a federal question, the Court held that it had no jurisdiction to answer the question as a matter of federal law.
 
 See Southland Corp. v. Keating, supra,
 
 465 U.S. at 8, 9, 104 S.Ct. at 857-58, 79 L.Ed.2d at 10-11.
 

 Our research has revealed that California is the only state to explicitly allow class-wide arbitration. In affirming the appellate court, the California Supreme Court held:
 

 Controversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party.
 

 Keating v. Superior Ct. of Alameda County,
 
 31 Cal.3d 584, 183 Cal.Rptr. 360, 375, 645 P.2d 1192, 1206-07 (1982)
 
 quoting La Sala v. American Sav. & Loan Assn.,
 
 5 Cal.3d 864, 877, 97 Cal.Rptr. 849, 857, 489 P.2d 1113, 1121 (1971).
 

 The California Supreme Court was not willing to excuse the plaintiffs from arbitration in order to reap the benefits of a class action suit, holding that, while these were contracts of adhesion, the agreements were not oppressive and were reasonably to be anticipated in a commercial context.
 
 Id.
 
 183 Cal.Rptr. at 364-66, 645 P.2d at 1194-98. Faced with this strong contractual requirement, the Court suggested a procedure for the parties which addressed the interest of both sides.
 

 At least one court has resisted arbitration on a class-wide basis because it detracts from some of the advantages of arbitration.
 
 See Harris v. Shearson Hayden Stone, Inc.,
 
 82 A.D.2d 87, 441 N.Y.S.2d 70. Judge Bloom, dissenting from the majority opinion in favor of compelling individual arbitration rather than allowing class action proceedings in the courts, nevertheless insisted that “[arbitration does not lend itself to the many subsidiary proceedings incident to an ongoing class action,
 
 e.g.
 
 determination of whether class action status should be granted, definition of the class, determination of the nature and kind of notice and by whom
 
 *298
 
 it should be sent, provision for opting out, etc.”
 
 Harris, supra,
 
 441 N.Y.S.2d at 78 (Bloom, J., dissenting). The California Supreme Court acknowledged this same list of obstacles, stressing the need for care and ingenuity in addressing these concerns with a minimum of judicial intrusion and delay.
 
 See Keating v. Superior Ct. of Alameda County,
 
 183 Cal.Rptr. 360 at 377, 645 P.2d 1192 at 1209. The California Supreme Court concluded, however, that in the context of arbitration agreements which were part of adhesion contracts, classwide arbitration was a “more efficient and fairer solution” than any alternative.
 
 See id.
 
 It therefore remanded to the trial court for determination of not only the class certification issues, but also the impact of this form of action and the court supervision it would entail, on the arbitration proceedings.
 
 See id.
 
 183 Cal.Rptr. at 377-78, 645 P.2d at 1209-10.
 

 Class-wide arbitration is a different animal than individual arbitration. In addition to the need for a trial court to initially certify the class
 
 [5]
 
 and to insure that notice is provided for,
 
 [6]
 
 the trial court will probably have to have final review in order to insure that class representatives adequately provide for absent class members.
 
 See Keating v. Superior Ct. of Alameda County,
 
 183 Cal.Rptr. at 377, 645 P.2d at 1209.
 

 In trying to adapt the more cumbersome class action procedure to the supposedly streamlined arbitration proceedings, the trial court, instantly, will have to account for additional complications. Class action rules allow for multiple representatives in cases where individuals feel that the initial representatives are not adequately representing them. An inundation of representatives during arbitration
 
 *299
 
 proceedings could hamstring the process through delay and complexity. Disagreement between multiple class representatives could especially complicate the selection of arbitrators. However, to the extent that management of the class becomes too complicated or potentially destructive of the arbitration process, the court may then be justified in not granting certification.
 
 See “Classwide Arbitration,” supra,
 
 at 799-800.
 

 In making a determination of class certification as a fair and efficient method of adjudicating the controversy, the trial court must consider various criteria, including “whether the particular forum is appropriate for the litigations of the claims of the entire class.” Pa.R.Civ.P. 1708(a)(5). Rule 1708 implies a great deal of discretion for the trial court by not according any specific weight to the listed criteria and by not insisting on the exclusivity of the list.
 
 See ABC Sewer Cleaning Co. v. Bell of Pa.,
 
 293 Pa.Super. 219, 226-27, 438 A.2d 616, 619 (1981).
 

 The trial court in making its determination regarding class certification must take into account the factors normally relevant to class certification, but also the special nature of arbitration proceedings, including the impact that court intrusion into the proceedings will have.
 
 See Keating v. Superior Ct. of Alameda County,
 
 183 Cal.Rptr. at 377, 645 P.2d at 1209-1210. The special characteristics of arbitration may mandate a stricter standard for class certification. However, it should not preclude it.
 

 Instantly, as in
 
 Keating v. Superior Ct. of Alameda County,
 
 the context of form contracts increases the likelihood that class action considerations would not unduly burden the arbitration process. The arbitrator will simply have to make a contractual interpretation which will apply equally to all members of the class.
 

 In finding that the arbitration agreement, agreed to by Shearson and the Dickler Group, will encompass a class action dispute, this Court is merely giving full weight to the wording of the Shearson client agreement,
 
 i.e.
 
 “any contro
 
 *300
 
 versy.” Such a procedural avenue is consistent with this state’s and the national impetus towards allowing all disputes to be decided in arbitration unless the contract specifically says otherwise.
 

 Given the three paths down which this litigation can be directed — compelled individual arbitration, class action in a court of law, or compelled classwide arbitration — the last choice best serves the dual interest of respecting and advancing contractually agreed upon arbitration agreements while allowing individuals who believe they have been wronged to have an economically feasible route to get injunctive relief from large institutions employing adhesion contracts.
 

 The availability of class suits in arbitration proceedings precludes either party from forcing the other to litigate in a position less advantageous than that for which they contracted. Allowing the suit to proceed through the court would defeat the purpose of the arbitration agreement, allowing plaintiffs to escape obligated arbitration in order to be heard in the sympathetic province of a jury trial. Future litigants might feel encouraged to join classes together for this single purpose when they otherwise would have been satisfied with individually litigating their claim.
 

 Compelling individual arbitration would force individuals already straitjacket by an industry-wide practice of arbitration agreements to fight alleged improprieties at an exorbitant economic cost. Individual arbitration would be small deterrent to companies certain that few proceedings will be instituted against them. Because the principles of
 
 res judicata
 
 and collateral estoppel are not applicable to arbitration proceedings, each plaintiff would be forced to fully litigate his complaint.
 

 In conclusion, the Shearson client agreement’s plain language allows for an interpretation which comports with federal and state policies favoring arbitration. These policies dictate broad arbitral powers, including equitable decrees. As Shearson has contended, this dispute must be resolved in the manner contracted for by the parties. Fair
 
 *301
 
 ness mandates, however, that the Dickler Group, bound by adhesion form contracts to arbitration agreements, be able to protect their interests by proceeding as a class through arbitration. We therefore reverse the trial court and remand for class certification proceedings. Following this decision, the court must compel arbitration for the class if it has been certified or individually if it has not been certified.
 

 Order reversed and remanded for proceedings consistent with this Opinion.
 

 Jurisdiction relinquished.
 

 [1]
 

 . Shearson has also raised a procedural objection in a footnote in its brief to this Court.
 
 See
 
 Appellant-Shearson’s Brief at 16. Shearson claims that the Dickler Group violated Pa.R.Civ.P. 1033 by filing its May 18, 1990 amended complaint without "consent of the adverse party or by leave of court.”
 
 See
 
 Pa.R.Civ.P. 1033. We find that Shearson has waived appellate review of this procedural objection.
 

 Pa.R.A.P. 2116 mandates that any issue which a party wishes to be considered must be set forth in its 'statement of the questions involved’ portion of its appellate brief.
 
 See
 
 Pa.R.A.P. 2116(a). Rule 2116(a) instructs that this requirement must “be considered in the highest degree mandatory,” and has been adhered to by this Court.
 
 See Federal Kemper Ins. Co. v. Derr,
 
 386 Pa.Super. 382, 391, 563 A.2d 118, 123 (1989).
 

 Shearson also failed to raise its objection in a proper manner to the trial court. As it has here, Shearson objected to the Dickler Group’s amended complaint in a footnote in its response to the Dickler Group’s answer to Shearson’s motion for order to stay claims.
 
 See
 
 Shearson’s response to the Dickler Group’s answer to Shearson’s motion, filed 6/6/90 at 3.
 
 But see e.g.
 
 Pa.R.C.P. 1017(b)(2). However, we find that the trial court did not specifically provide or deny permission to the Dickler Group to amend its complaint. We note that trial courts have discretion to liberally permit amendment of the pleadings.
 
 See Shanks v. Alderson,
 
 399 Pa.Super. 485, 491, 582 A.2d 883, 886 (1990);
 
 Daley v. J. Wanamaker, Inc.,
 
 317 Pa.Super. 348, 358, 464 A.2d 355, 361 (1983).
 

 [2]
 

 . The
 
 Keating
 
 case was before the Supreme Court on appeal from the California Supreme Court. This case is referred to
 
 infra
 
 regarding the availability of class action procedures in arbitral forums. While proceeding through the California appellate courts, the case was titled
 
 Keating v. Superior Ct. of Alameda County,
 
 109 Cal.App.3d 784, 167 Cal.Rptr. 481 (1980); 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192 (1982).
 

 [3]
 

 . One District Court went so far as to suggest that “[a]n arbitration panel may grant equitable relief that a Court could not.”
 
 Sperry Intern Trade, Inc. v. Government of Israel,
 
 532 F.Supp. 901, 905 (S.D.N.Y.1982).
 

 [4]
 

 . This holding is consistent with the especially expansive presumption of arbitrability employed by the Supreme Court in
 
 AT & T Technologies, supra,
 
 for broad arbitration clauses.
 

 [5]
 

 . Arbiters because of their limited subpoena power and their lack of reviewability until final order are probably not equipped nor appropriate for the task of class certification.
 
 See "Classwide Arbitration: Efficient Adjudication or Procedural Quagmire",
 
 U.Va.L.Rev. Vol 67 #4 May 1981 p. 787.
 

 [6]
 

 . Notice will be greatly facilitated by the existence of the very contracts which contain the arbitration agreements.
 
 “Classwide Arbitration”, supra,
 
 at 804.